IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHARLES CARREON,

        Plaintiff,        Civil No. 01-3073-TC

        v.        ORDER

JACKSON COUNTY and DEBBIE MINDER,

        Defendants.

COFFIN, Magistrate Judge.

    Presently before the court is defendants' motion (#21) for attorney fees. For the reasons described below, the motion is denied.

### BACKGROUND

    This is a case with a very brief procedural history and a very lengthy factual background. Although the action presently

1 - ORDER

before the court was filed and dismissed in less than three months, the parties - Mr. Carreon and Ms. Minder, at least - have been at occasional loggerheads on various issues of personal disagreement for well over a decade, first as private individuals and now as attorneys on opposite sides of federal litigation.  However, any historical disagreements between Mr. Carreon and Ms. Minder, such as those eloquently described by plaintiff in his original pleadings, are not consequential to the issue before the court today.

    The present issue between the parties traces its roots back to 1994, when plaintiff built an unpermitted house on twenty acres of property he owned in Colestine Valley in Jackson County.  Although plaintiff admits to receiving occasional visits by Jackson County officials almost immediately upon completion of the house, he asserts that no legal action was taken against the property until after Ms. Minder took a position as Assistant County Counsel for Jackson County.  Then, plaintiff claims, "motivated by religious and retaliatory animus toward plaintiff as a Buddhist and a lawyer, she immediately began working on code enforcement proceedings against plaintiff".  Memorandum in Support of Motion for Preliminary Injunction (#2) at 4.[1]  Eventually the house was condemned to

---

[1] The court notes only that plaintiff asserted this animosity towards him as a basis for his complaint and motions. Other evidence indicates that, although they have had their differences, Mr. Carreon and Ms. Minder have in the recent past been able to work quite well

2 - ORDER

destruction by a state court order, and plaintiff filed a complaint in federal court for injunctive relief and damages, along with a motion for a temporary restraining order and a preliminary injunction.

Plaintiff's motion for a temporary retraining order was denied, and a few days before a scheduled hearing on his motion for a preliminary injunction, plaintiff withdrew that motion. Eventually, plaintiff agreed not to oppose defendants' motion for dismissal of his claims, and the court dismissed all injunctive claims with prejudice and plaintiff's claim for damages without prejudice. See Order of 11/08/01.

Defendants now come before the court seeking attorney fees for the time spent working to oppose plaintiff's motion for a preliminary injunction, based on the timing of plaintiff's withdrawal of the motion. On August 16, 2001, the court set a hearing date of August 30, 2001 to hear arguments on plaintiff's motion. On August 27, 2001, the court received a letter in which plaintiff indicated he was withdrawing the motion. Defendants assert that, based on the fact that plaintiff had quitclaimed his interest in the property on August 20, 2001,[2] he

---

together. Further, Ms. Minder denies the allegations of animus against Mr. Carreon. For purposes of defendants' motion for fees, the court does not need to, and does not, consider the motivations of any party in engaging in state court proceedings against the others.

[2]While only of passing relevance here, the court notes the bizarre nature of the property transactions: apparently, on August 20, plaintiff transferred his interest in the property to his wife, Tara

3 - ORDER

knew he would withdraw the motion and kept that information from defendants until August 27, thus forcing them to work needlessly on their opposition. Defendants assert that this delay was "the epitome of bad faith and vexatiousness" and move the court to award attorney fees for the time spent working on their opposition between August 20 and August 27. Memorandum in Support of Motion for Attorney Fees (#22) at 2.

## DISCUSSION

Under the American Rule, absent contractual or statutory authorization, a prevailing litigant ordinarily may not collect attorney fees. <u>Miller-Wohl Co., Inc. v. Comm'r of Labor and Industry</u>, 694 F.2d 203, 204 (9th Cir. 1982). However, a court may assess attorney fees "when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons'." <u>Alyeska Pipeline Service Co. v. Wilderness Soc'y</u>, 421 U.S. 240, 258-259 (1975) (citation omitted). Although a precise definition of what constitutes bad faith has not been formulated by the United States Supreme Court, see <u>Chambers v. Nasco</u>, 501 U.S. 32, 63 (1991) (Kennedy, J., dissenting), there are a few

---

Carreon. On that same day, Tara Carreon transferred all of her interests to a corporation, American Buddha, Inc., whose president was Charles Carreon. On November 1, American Buddha, Inc. transferred the property back to Tara Carreon. The court can but speculate that the Carreons and the corporation were attempting to accomplish some sort of end-run around the state proceedings against the property and Mr. Carreon. <u>See</u> Letter of 8/27/01 to Mike Jewett (attached to Affidavit of Mike Jewett (#23)).

4 - ORDER

well-established principles relevant here. It is clear that bad faith supporting an award of attorney fees may be found in conduct that led to the filing of a lawsuit or in conduct occurring during the course of the action itself. Hall v. Cole, 412 U.S. 1, 15 (1973). Some of the articulated goals of awarding fees for "bad faith" conduct include protecting against and punishing frauds upon the court, Universal Oil Products Co. v. Root Refining Co., 328 U.S. 575, 580 (1946), and preventing and punishing tactics used purely to delay or disrupt litigation or hamper a court order. Hutto v. Finney, 437 U.S. 678, 689 n.14 (1978). However, "[b]ecause of their very potency, inherent powers [such as awarding attorney fees for bad faith conduct] must be exercised with restraint and discretion." Chambers, supra, 501 U.S. at 44.

The property transactions described in footnote 2 make it appear possible that plaintiff has been operating with questionable tactics in his state court proceedings. However, those proceedings are not directly the focus of this litigation and as such this court is not in a position to properly evaluate plaintiff's motivations in employing such tactics or, indeed, whether such tactics were actually employed. What is at issue here, put simply, is plaintiff's conduct in filing a motion for a preliminary injunction and later withdrawing it. This, of course, is not in and of itself "bad faith" conduct. Pending

5 - ORDER

motions are withdrawn, if not as a matter of course, than at least not infrequently and certainly for a variety of perfectly acceptable reasons. The only conceivable way defendants could claim plaintiff's conduct occurred in "bad faith" would be if they could show that plaintiff had filed the motion with the sole intent of causing defendants to incur needless expense, or that he deliberately withheld knowledge that he would withdraw the motion based on that intent. They have demonstrated neither. While plaintiff clearly did not adequately consider the appropriateness of seeking a federal injunction on a state court order, defendants have not shown that the motion for such was filed in bad faith. Nor have they shown that plaintiff in fact knew on August 20 that he would withdraw his motion; although he had quitclaimed his interest in the relevant property, his motion was not limited to injunctive relief on that property[3] and plaintiff could well have intended, until August 27, to continue pursuing the motion. While the court agrees that professional courtesy and general goodwill should have inspired plaintiff to update defendants about the changes in his property interests and the potential impact of such changes on any ongoing litigation, defendants have not shown

---

[3]Although the legal bases for his motion are questionable, plaintiff sought an injunction, inter alia, against defendants' alleged continuing retaliatory conduct against him for exercising his First Amendment rights. This aspect of his motion, at least, would not be moot per se upon the transfer of his property interests.

6 - ORDER

that his failure to do so constitutes "bad faith" in this court proceeding.

The court is unconvinced that plaintiff's conduct during this litigation was so heinous as to constitute "bad faith" and warrant the extraordinary sanction of shifting of defendants' attorney fees to plaintiff.  As such, defendants' motion for attorney fees (#21) is denied.

DATED this ___ day of January, 2002.

                                         /s/
                                         Thomas M. Coffin
                                         United States Magistrate Judge